UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN ROE, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:19-CV-0792-X-BK |
| | § | |
| UNITED STATES OF AMERICA | § | |
| et al., | § | |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff John Roe's emergency renewed motion for a temporary injunction. (Doc. 152). Roe's motion once again seeks a temporary restraining order (TRO) to prevent the United States from detaining or removing him while he pursues claims against the defendants, the United States of America; Kristi Noem, in her official capacity as the Secretary of the Department of Homeland Security (DHS); Todd M. Lyons, in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement (ICE); and Garrett Ripa, in his official capacity as the Field Office Director of ICE's Miami Field Office (collectively, the "Government").

After reviewing the briefs and the relevant caselaw, the Court **DENIES** Roe's motion for the following reasons.

### I.   Background

Roe, a Haitian citizen with Temporary Protected Status in the United States, asks the Court to prevent the Government from deporting him while he pursues

1

claims under the Federal Tort Claims Act. Roe alleges that, while he was in Johnson County Corrections Center in Cleburne, Texas, as an ICE detainee, he suffered a severe seizure and was nonresponsive for about two days. From this event, Roe's allegations present a parade of horribles.

He regained consciousness in a nearby hospital, where two armed correctional officers were stationed to guard him. Roe asserts that one of the officers violently sexually assaulted him with his duty weapon and that, when Roe reported the assault upon returning to the jail, he was essentially mocked, ignored, and denied the accommodations and protections he was due, including those in the Prison Rape Enforcement Act. He received no medical treatment or examination until he was released on bail and went to the hospital.

Then, Roe alleges, DHS and Johnson County colluded to criminally prosecute him for his outcry to government officials on the grounds that he made a false report. But the jury found him not guilty due to hospital records that supported his claim of sexual assault.

He now seeks damages for the violations he alleges, but he is still subject to removal proceedings before an immigration court with a hearing scheduled for October 15, 2026. Roe is concerned that if he is removed from the United States, he would be unable to effectively prosecute his tort action against the Government. Pointing to the President's Executive Order 14,165,[1] the Laken Riley Act,[2] and

---

[1] Securing Our Borders, Exec. Order No. 14,165, 90 C.F.R. § 8467 (2025).

[2] Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025).

Florida's general approach to immigration enforcement—Roe is a Florida resident—Roe fears his detention and deportation may be imminent.

The Court previously denied a TRO request from Roe because it sought relief unrelated to the relief Roe sought in his complaint. But the Court gave Roe leave to amend his complaint to reflect his new claims, and he did so. He now asks the Court for a TRO once again.

## II.   Legal Standard

TROs serve to preserve the status quo and prevent irreparable harm to the movant so the court can "render a meaningful decision after a trial on the merits."[3] To warrant the extraordinary relief of a TRO, the movant must establish four factors:

> (1) a likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest.[4]

TROs "should only be granted if the movant has clearly carried the burden of persuasion on all four [elements]."[5] Failure to establish any one of the elements results in denial of the TRO.[6]

---

[3] *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

[4] *Ladd v. Livingston*, 777 F.3d 286, 288 (5th Cir. 2015).

[5] *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) (articulating the standard a court should apply when considering preliminary injunctions, which use the same standard as TROs).

[6] *Bluefield Water Ass'n, Inc. v. City of Starkville*, 577 F.3d 250 (5th Cir. 2009).

### III.  Analysis

### 1.  Roe's likelihood of success on the merits.

The first element for a TRO requires the movant to show a substantial likelihood of success on the merits of his case. "To show a likelihood of success, the plaintiff must present a prima facie case, but need not prove that he is entitled to summary judgment."[7]

Roe argues that he has a high likelihood of success on the merits of his First and Fifth Amendment claims that relate to his access to the courts. "The First Amendment Petition Clause guarantees the right to access the courts of the United States."[8] And the Due Process Clause similarly "assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights."[9] Regardless, Roe fails to articulate sufficient grounds for success on either of these claims.

He has not shown that lawful removal in this context would impede his access to the court system such that it would violate his rights to petition and to due process. The Constitution does not guarantee litigants the most convenient or efficient access to courts.[10] Even assuming the Petition and Due Process Clauses cover Roe and his

---

[7] *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013).

[8] *Hill v. Walker*, 718 F. App'x 243, 247–48 (5th Cir. 2018).

[9] *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974).

[10] *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (protecting prisoners' right to access tools to attack their sentences or the conditions of their confinement but stating that "[i]mpairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration").

claims—since they most often apply to prisoners seeking to bring habeas petitions or appeal a criminal conviction[11]—his speculative statements about Haiti's "severely limited infrastructure, including minimal electricity and internet access,"[12] do not allege that he will be prevented from presenting his claims.

His removal itself is speculatory because he currently has Temporary Protected Status and, as he alleges himself, he "is not subject to a final order of removal."[13] But even if the Government were to detain him unexpectedly under the Laken Riley Act as he fears, nothing in his live complaint or TRO request suggests he would be unable to present his claims while in detention. In fact, as the Government notes in its response, Roe continued to prosecute this very case while in detention since he first filed it over six years ago.

Therefore, Roe does not establish a likelihood of success on the merits for either of the claims he argues in his TRO motion.

### 2.   Roe's irreparable harm.

The second element is irreparable harm. "[T]he central purpose of a [TRO] . . . is to prevent irreparable harm. It is the threat of harm that cannot be undone which authorizes exercise of this equitable power to enjoin before the merits are fully determined."[14] "Thus only those injuries that cannot be redressed by the

---

[11] *E.g.*, *id.*; *DeMarco v. Davis*, 914 F.3d 383, 387 (5th Cir. 2019) ("Prisoners have a constitutionally protected right of access to the courts that is rooted in the Petition Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment." (cleaned up)); *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993) (collecting cases).

[12] Doc. 152 at 11.

[13] Doc. 152 at 6.

[14] *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975).

application of a judicial remedy after a hearing on the merits can properly justify a preliminary injunction."[15]  That is to say, an "injury is 'irreparable' only if it cannot be undone through monetary remedies."[16]

Here, as above, Roe fails to establish anything more than speculation.  The harm he posits is removal to Haiti and the "dire conditions" he would be subject to there.[17]  Though Roe has a scheduled hearing before an immigration court, it is over a year after discovery closes and dispositive motions are due in this case.[18]  And the only facts Roe pleads to support the assertion that he might be detained and deported otherwise are the passage of the Laken Riley Act, the President's executive order 14,165, and the story of a United States citizen whom ICE detained for thirty hours in Florida.  Though the confluence of these factors could reasonably give Roe concern about potential detention and removal, it does not rise to the level of imminent harm required for a TRO.

### 3. Balancing Roe's harm against the Government's.

When considering the third element for a TRO, the Court weighs the harm the plaintiff would face without a TRO to the harm a TRO would cause the defendant[19]—here, Roe and the Government, respectively.

---

[15] *Canal Auth.*, 489 F.2d at 573.

[16] *Enterprise Int'l, Inc.*, 762 F.2d at 464 (cleaned up).

[17] Doc. 152 at 11.

[18] Doc. 148 at 2 (setting the close of discovery for August 2, 2025, and the dispositive motion deadline for September 28, 2025).

[19] *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("[C]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." (cleaned up)).

While Roe does not ask for (and the Court cannot give[20]) an injunction against the deportation of all aliens with pending claims against the Government, the Government claims it would still suffer harm in having to pause enforcement actions and divert resources to defend against a floodgate of cases filed by aliens fearing detention and deportation.

Roe is correct that any injunction in this case would apply to him alone, but so is the Government in suggesting an injunction here would likely contribute to an increase in cases filed against the Government for the sole purpose of delaying immigration enforcement actions. Therefore, this element does not weigh in Roe's favor.

### 4. Effect of Roe's request on the public interest.

Finally, the Court examines the effect of Roe's request on the public interest. The Court agrees with Roe that governmental accountability and protecting fundamental constitutional rights serve the public interest. However, Roe's Federal Tort Claims Act and Administrative Procedure Act claims, through which he seeks to hold the Government accountable, will proceed without an injunction in this case. And enforcing the laws of the land—including immigration laws—serves the public interest as well. The Government is tasked with enforcing those laws, and this injunction would prevent it from doing so. Therefore, Roe's TRO request fails to establish that an injunction would not disserve the public interest.

---

[20] *Trump v. CASA, Inc.*, 606 U.S. __, No. 24A884, slip. op. at 6 (June 27, 2025) (stating universal injunctions "likely exceed the equitable authority that Congress granted to federal courts").

## IV. Conclusion

Because Roe's request falls short of meeting the required elements to warrant a TRO, the Court **DENIES** his emergency motion for a TRO (Doc. 152).

**IT IS SO ORDERED** this 30th day of June, 2025.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE