IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOHN ROE, § | |
|     PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:19-CV-792-X-BK |
| § | |
| UNITED STATES OF AMERICA, ET. AL, § | |
|     DEFENDANTS. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case was referred to the undersigned United States magistrate judge for pretrial management. Before the Court for the entry of findings and a recommended disposition is the *Second Motion for Summary Judgment*, Doc. 183, filed in July 2025, on behalf of Defendants Kristi Noem (Secretary of the United States Department of Homeland Security (DHS)), Todd M. Lyons (Acting Director of the United States Immigration and Customs Enforcement (ICE)), Garrett J. Ripa (Field Office Director of the United States ICE/Miami Field Office), and the United States of America. Roe has not responded to the *Second Motion for Summary Judgment*, and the time to do so has long expired. Nonetheless, for the reasons detailed below, Defendants' motion should be **GRANTED**.

**I. BACKGROUND**

    **A. Pre-Remand History.**

Plaintiff Roe, then an ICE detainee at the Johnson County Correctional Center in Cleburne, Texas, filed this lawsuit asserting claims under the Federal Tort Claims Act (FTCA) for damages suffered as the result of an alleged sexual assault by a correctional officer while Roe was hospitalized after suffering a seizure, and for the subsequent false arrest, false imprisonment,

and malicious prosecution of him for reporting the alleged rape.[1] Specifically, in the Third Amended Complaint (the relevant complaint on appeal), Roe alleged 18 claims, which can be categorized into two groups: (1) claims 1-6 sounded in negligence and similar tort theories based on the alleged sexual assault and related matters that occurred immediately before and afterwards, including claims of Defendants' failure to comply with the requirements of the Prison Rape Elimination Act of 2003 (PREA), Doc. 15 at 41-51; and (2) claims 7-18 were intentional tort claims arising out of Plaintiff's subsequent arrest, re-arrest, and prosecution for making a false statement in connection with his report of the alleged sexual assault, Doc. 15 at 51-60.

On March 24, 2020, the Court accepted the recommendation of the undersigned, granting the Government's motion to dismiss all of Roe's claims alleged in the Third Amended Complaint with prejudice and denying Roe's request to once again amend his complaint. Doc. 22; Doc. 27.

On direct appeal, the United States Court of Appeals for the Fifth Circuit affirmed the judgment of this Court:

- dismissing Roe's claims alleged in Counts 1-5 and 13 (related to the alleged sexual assault) as time barred;

- Counts 7-10 (related to his subsequent arrest and prosecution for making a false statement regarding his report of the alleged sexual assault) for failure to state a claim;

- Count 12 (abuse of process) for failure to state a claim;

- Count 18 (intentional infliction of emotional distress) for failure to state a claim; and

---

[1] A more comprehensive recitation of the facts and pre-remand history can be found at *Roe v. United States*, 839 F. App'x 836, 839-40, 848 (5th Cir. 2020) (per curiam), *aff'g in part, rev'g in part* No. 3:19-CV-792-C-BK, 2020 WL 1434505 (N.D. Tex. Mar. 24, 2020) (Cummings, J.).

- Counts 14, 16-17 as forfeited for failure to brief.

*Roe*, 839 F. App'x at 844-47.  However, the appellate court reversed the dismissal of Count 11 (malicious prosecution) and Count 15 (civil conspiracy), "[t]o the extent that Roe has alleged DHS agents participated in his malicious prosecution (count 11))," and remanded the case for further proceedings.  *Roe*, 839 Fed. App'x. at 847.

### B. Post-Remand History

Since the case was remanded, it has faced significant procedural delays—including as to discovery—due to Roe's incarceration for unrelated charges.  Doc. 54; Doc. 60; Doc. 61; Doc. 64; Doc. 84.  Accordingly, the Court has granted several extensions in discovery-related and other matters.  Doc. 53; Doc. 57; Doc. 71; Doc. 84; Doc. 90; Doc. 114; Doc. 115; Doc. 119; Doc. 126.

Notably, the Fifth Circuit also upheld this Court's denial of leave to amend the complaint. However, in this Court's order denying Roe's *Emergency Motion for Temporary Restraining Order and Preliminary Injunction*, Doc. 142, in which he sought an order enjoining his removal from the United States, Roe was granted **limited leave to amend** his complaint to raise claims related to his possible deportation during the pendency of this lawsuit.  Doc. 146.  Nevertheless, in the Fifth Amended Complaint (the "Operative Complaint"), Roe goes well beyond the mandate of the appellate court and the limited leave granted by this Court and alleges additional claims against Defendant United States under the Administrative Procedure Act ("APA"), and the First and Fifth Amendments of the U.S. Constitution, *see* Doc. 151 at 48-66, that bear no relation to the relief sought by his *Emergency Motion for Temporary Restraining Order and Preliminary Injunction*, Doc. 142, to-wit: the request for orders enjoining his removal from the United States during the pendency of this suit.

Specifically, under the FTCA and common law, Roe re-alleges malicious prosecution in Count One, Doc. 151 at 48-50, and civil conspiracy in Count Two, Doc. 151 at 50-51. And in Counts Five and Six, Roe seeks injunctive and declaratory relief forestalling his future deportation, alleging violations of his First Amendment right "to petition the government for redress of grievances and to access the courts" and due process guarantees under the Fifth Amendment, if he is deported. *See* Doc. 151 at 63-65.

But Roe also alleges the following additional claims for which he seeks declaratory and injunctive relief:

- Count Three—APA claim for failure to comply with regulations promulgated under PREA. Doc. 151 at 60-62.

- Count Four—APA claim for failure to comply with PREA and to advise, in violation of PREA, of his purported eligibility for U Visa protections. Doc. 151 at 62-63.

In July 2025, before the amended discovery deadline passed, the Government filed its *Second Motion for Summary Judgment*. Doc. 183. The Government subsequently filed motions to stay discovery and pending deadlines until resolution of the pending motion for summary judgment, which the Court granted. Doc. 194; Doc. 195; Doc. 220. Roe has not responded to the Government's *Second Motion for Summary Judgment* and the time to do so has long expired.

## II. APPLICABLE LAW

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and

inferences in the light most favorable to the nonmoving party and resolve all factual controversies in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

      A party moving for summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (citation omitted). Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

      However, the court may not grant summary judgment by default when, as here, the nonmovant fails to file a response in opposition to the motion, but may accept as undisputed the movant's version of the facts and grant a motion for summary judgment when the movant has made a prima facie showing of entitlement to summary judgment. *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988) (when the nonmovant fails to respond to a motion for summary judgment, the court does not err by granting the motion when the movant's submittals make a prima facie showing of entitlement to judgment as a matter of law).

## III. ANALYSIS

### A. The Government is Entitled to Summary Judgment on Roe's FTCA Claims.

The Government argues it is entitled to summary judgment on Roe's malicious prosecution and civil conspiracy claims under the FTCA. Doc. 184 at 32. "Generally, the United States enjoys sovereign immunity from suit unless it has specifically waived immunity." *Jeanmarie v. United States*, 242 F.3d 600, 602 (5th Cir. 2001). "The FTCA allows those injured by federal employees to sue the United States for damages." *Martin v. United States*, 605 U.S. 395, 401 (2025). "The statute achieves that end by waiving, in 28 U.S.C. § 1346(b), the federal government's sovereign immunity for 'certain torts committed by federal employees acting within the scope of their employment.'" *Id.* (quoting *Brownback v. King*, 592 U.S. 209, 212 (2021) (internal quotation marks omitted)). As to these excepted torts, plaintiffs may recover against the United States and its agencies under the FTCA "in the same manner and to the same extent as a private individual under like circumstances" under substantive state law. 28 U.S.C. §§ 2674, 2679(a).

The FTCA is the "supreme" federal law addressing the United States' liability for torts committed by its agents. It supplies the "exclusive remedy" for damages claims arising out of federal employees' official conduct. *See Hui v. Castaneda*, 559 U. S. 799, 806 (2010). The United States will usually be liable if a "private individual under like circumstances," § 2674, "would be liable to the claimant in accordance with the law of the place where the act or omission occurred," § 1346(b)(1). So, a plaintiff may generally prevail in an FTCA suit by demonstrating that "the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward." *Carlson v. Green*, 446 U.S. 14, 23 (1980).

"Therefore, Roe's claims are governed by the substantive law of Texas, the state where the allegedly tortious acts and omissions occurred." *Roe*, 839 F. App'x at 842-43 (citing § 1346(b)).

### 1. *Malicious Prosecution Claim*

The Government first argues that it is entitled to summary judgment on Roe's malicious prosecution claim. Doc. 184 at 33. Roe alleges an FTCA claim for malicious prosecution under state common law. Doc. 151 at 48. Under the common law of Texas, malicious prosecution is long-recognized "cause of action for those subjected unjustifiably to criminal proceedings. . . ." *Kroger Texas Ltd. v. Suberu*, 216 S.W.3d 788, 792 (Tex. 2006). "The elements of a claim for malicious prosecution under Texas state law are: '(1) commencement of a criminal prosecution against the plaintiff; (2) causation (initiation or procurement) of the action by the defendant; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the absence of probable cause for the proceedings; (6) malice in filing the charge; and (7) damage to the plaintiff.'" *Roe*, 839 F. App'x at 846 (citing *Brown v. Nationsbank Corp.*, 188 F.3d 579, 586 (5th Cir. 1999) (citing *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997))).

Here, the Government does not dispute that the first and third elements are satisfied but argues that there is no evidence to support elements two, four, five, and six. Doc. 184 at 33. That notwithstanding, the Court concludes that because Roe clearly cannot and has not demonstrated that there is a genuine dispute of material fact with respect to causation by the United States or its agents, it need not reach the remaining elements, and the Government is entitled to summary judgment in its favor.

Causation is an indispensable element of a malicious prosecution claim. Causation is established by proof that a person initiates or procures a prosecution. *See King v. Graham,* 126 S.W.3d 75, 78 (Tex. 2003) (per curiam); *see also Browning–Ferris Industries v. Lieck,* 881

S.W.2d 288, 292 (Tex. 1994).  A defendant initiates a prosecution when they file formal charges against the plaintiff.  *Lieck,* 881 S.W.2d at 293.  A defendant procures a prosecution when its

> actions were enough to cause the prosecution, and but for [its] actions the prosecution would not have occurred. [The defendant] does not procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another, including a law enforcement official or the grand jury, unless the person provides information which he knows is false.

*Id*; *see also Dangerfield v. Ormsby,* 264 S.W.3d 904, 910 (Tex. App.—Fort Worth 2008, no pet.) (explaining that to establish procurement, the defendant's desire must be the "determining factor in the official's decision to commence the prosecution").

Thus, while "proof that a complainant has knowingly furnished false information is *necessary* for liability when the decision to prosecute is within another's discretion. . . such proof is not *sufficient*."  *King,* 126 S.W.3d at 76 (emphasis in original).  Instead, "there must be proof that the prosecutor acted based on the false information and that but for such false information the decision [to prosecute] would not have been made."  *Id.*

Here, Roe was arrested by an officer of the Johnson County Sheriff's Office, and the criminal charge against him was filed in county court by the Johnson County Attorney's Office. *See* Doc. 48-1 (App. 007, 054).  There is no evidence, and indeed Roe does not allege, that either DHS officials or any other federal employee "file[d] formal charges against the plaintiff," as would be necessary to show causation under the "initiation" prong of this element.  *Mylonakis v. M/T GEORGIOS M.*, 909 F. Supp. 2d 691, 735 (S.D. Tex. 2012).  Because there is no evidence that the Government initiated the prosecution, there must be some evidence to create a genuine dispute of material fact as to the procurement prong of causation for Roe to survive summary judgment as to his malicious prosecution claim.

8

However, Roe has offered no evidence that any agent of the United States government procured a malicious prosecution of him in Johnson County Court or knowingly proffered false information to Johnson County officials to procure Roe's prosecution. Although Roe's unsworn allegations in the Operative Complaint do not constitute competent summary judgment evidence, the Court notes that Roe's assertions that DHS Agents "Alvarado and Aguilar submitted deliberate falsehoods imputed to Plaintiff in an official government report to falsely establish probable cause for Plaintiff's prosecution," Doc. 151 at 49, are merely conclusory. The same is true of Roe's bare allegations that Agents Alvardo and Aguilar "procured Plaintiff's prosecution without probable cause by knowingly provid[ing] false information in official reports, testif[ying] in pretrial and trial proceedings to maliciously cause the prosecution of Plaintiff." Doc. 151 at 49.

However, assuming *arguendo* that there is evidence that federal officials knowingly furnished false information to Johnson County officials, there is nothing proffered to suggest that it was the but-for causation of Johnson County's decision to prosecute Roe for filing a false report. *Lieck,* 881 S.W.2d at 293. Indeed, the Government's evidence in support of its motion shows that Captain David Blankenship, who was employed with the Johnson County Sheriff's Office, began investigating Roe's sexual assault allegation a week before Alvarado and Aguilar arrived in Johnson County. In his affidavit, Blankenship avers that he began conducting interviews with officers and administered a polygraph exam to Roe, which Roe voluntarily submitted to, before federal officials arrived in Johnson County. Doc. 48-1 at 4-8 (App. 004-008). Blankenship also states that he warned Roe that he would be charged with filing a false report if he was lying. Doc. 48-1 at 4 (App. 004). According to Blakenship's uncontroverted statement, in those interviews, officers denied that any sexual assault of Roe occurred. Doc. 48-

9

1 at 5-8 (App. 005-008). Further, Roe failed the polygraph exam when asked whether the alleged sexual assault occurred. Doc. 48-1 at 25-27 (App. 025-027).

This evidence, taken as a whole, cannot lead a rational trier of fact to find that Johnson County would not have prosecuted Roe absent any influence or false statements from federal officials, even if evidence of such false statements existed. *See Vu v. Tran*, No. 02-21-00059-CV, 2021 WL 3679245, at *5 (Tex. App.—Fort Worth Aug. 19, 2021, no pet.) (observing that the procurement prong of causation was not met when "the record [was] clear that the Arlington Police Department considered evidence other than [defendant's] communications with them"); *Weaver v. Bell*, No. 03-04-00169-CV, 2005 WL 1364046, at *6 (Tex. App.—Austin June 10, 2005, no pet.) (mem. op.) ("The evidence shows that the police investigated and interviewed other witnesses before deciding to arrest [plaintiff] and that the decision was not based solely on [defendant's] statement to the police.").

Thus, viewing the evidence in the light most favorable to Roe, there is no genuine dispute of material fact that the Government or its agents initiated the prosecution against him, procured Johnson County to charge him by providing a false report, or was the but-for cause of Johnson County's prosecution of Roe in any other way.

### 2. Civil Conspiracy Claim

"Civil conspiracy is not a stand-alone tort. Rather, it is a derivative tort that requires the plaintiff to prove defendants' participation in an underlying tort." *Roe*, 839 F. App'x at 847 (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)). Further, the Fifth Circuit remanded Roe's claim for civil conspiracy for further proceedings **to the extent** Roe alleged that DHS participated in his malicious prosecution. *Id.* Accordingly, because Roe's claim for malicious prosecution fails as a matter of law for the reasons stated in the previous subsection,

Roe's civil conspiracy claim likewise fails as a matter of law. Thus, the Government's motion for summary judgment as to Roe's civil conspiracy claim should also be granted.

### B. Roe's PREA Claims Are Precluded.

As outlined *supra*, despite the appellate court's limited remand, Roe alleges additional claims under the APA in the Operative Complaint. Roe contends that the Government failed to comply with DHS's PREA, codified at 6 C.F.R. Part 115, *et seq*., which he alleges is a violation of the Due Process Clause of the Fifth Amendment and the APA, specifically 5 U.S.C. §§ 701-706. Doc. 151 at 52-63 (Counts Three and Four). The Government argues that these additional claims are barred by claim preclusion, because Roe essentially "seeks to re-allege his earlier claims that DHS/ICE employees were negligent in investigating his sexual assault allegations and/or failed to follow PREA policies and regulations." Doc. 184 at 46-47.

The Government apparently focuses its argument on whether claim preclusion under the doctrine of *res judi*ca prevents Roe from relitigating his negligence argument. Doc. 184 at 46-48. But because there was no earlier suit here, the requirements of claim preclusion as set out in the Government's brief are not met here.[2] Nevertheless, on nearly the same basis as that advanced by the Government, the mandate rule supports the same result—that Plaintiff's claims based on alleged violations of PREA are indeed precluded from review here. Stated more succinctly, the mandate rule requires this Court on remand to "implement both the letter and spirit of" the Fifth Circuit's mandate and precludes this Court from disregarding "the explicit directives" of the Fifth Circuit. See *United States v. Becerra*, 155 F.3d 740, 753 (5th Cir. 1998),

---

[2] As the Government correctly notes in its brief, Doc. 184 at 47, the doctrine of *res judicata*, or claim preclusion, "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 571 (5th Cir. 2005).

11

*abrogated on other grounds as recognized in* United States v. Farias, 481 F.3d 289, 291-92 (5th Cir. 2007). "The mandate rule simply embodies the proposition that a district court is not free to deviate from the appellate court's mandate." *Becerra*, 155 F.3d at 753 (cleaned up).

The mandate rule is a "specific application of the general doctrine of law of the case." United States v. Lee, 358 F.3d 315, 321 (5th Cir. 2004) (quoting United States v. Matthews, 312 F.3d 652, 657 (5th Cir. 2002)). It bars not only "litigation of issues decided by the district court but foregone on appeal," but also issues "otherwise waived, for example because they were not raised in the district court [before appeal]." Lee, 358 F.3d at 321. The mandate rule "reflects the jurisprudential policy that once an issue is litigated and decided, that should be the end of the matter." United States v. Pineiro, 470 F.3d 200, 205 (5th Cir. 2006) (internal footnotes omitted). "This rule is essential to the orderly administration of justice, as it is aimed at preventing obstinate litigants from repeatedly reasserting the same arguments and at discouraging opportunistic litigants from appealing repeatedly in the hope of acquiring a more favorable appellate panel." *Id.* (cleaned up).

Here, as the Government correctly asserts, "[e]ssentially, Roe seeks to re-allege his earlier claims that DHS/ICE employees were negligent in investigating his sexual assault allegations and/or failed to follow PREA policies and regulations under the APA." Doc. 184 at 47 (citing generally Doc. 22; Doc. 27; Doc. 28). In its mandate, however, the Fifth Circuit affirmed the dismissal of all of Roe's previous claims premised on Defendants' alleged violations of PREA. *Roe*, 839 F. App'x at 848; *see also* Doc. 15 (Third Amended Complaint ("Prior Complaint") alleging that DHS and ICE violated PREA (42 U.S.C. §§ 15601-09, 34 US.C. §§ 30301-09), the National Detention Standards, and 6 C.F.R. Part 115. Doc. 15, ¶¶ 8–10; *Roe*, 839 F. App'x at 845.

Now, in the Operative Complaint, Roe attempts to relitigate those claims that DHS and ICE violated PREA by attempting to recast them as violations of the Due Process Clause and APA. Doc. 151 at 35 n.21, ¶¶ 158, 193-207. The mandate rule precludes this, as there is no question that Roe could have alleged the violations of PREA under the Due Process Clause and the APA before judgment and appeal, yet failed to do so. *See, e.g.*, *Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 481 (4th Cir. 2007) ("[U]nder the mandate rule a remand proceeding is not the occasion for raising new arguments or legal theories."); *cf. Hope v. Harris*, No. 9:18-CV-27, 2025 WL 2671543, at *1 (E.D. Tex. June 18, 2025) (Hawthorn, J.), *rep. & rec. adopted*, No. 9:18-CV-27, 2025 WL 2663665 (E.D. Tex. Sept. 17, 2025) (holding that "[a]llowing an amendment with claims other than those remanded to this court by the Fifth Circuit would violate the mandate rule." (citation omitted)).

Consequently, because the mandate rule bars Roe from relitigating claims brought or that could previously have been brought prior to the Fifth Circuit's limited remand of this case, Roe's PREA-premised claims in Counts Three and Four of the Operative Complaint fail as a matter of law and should be dismissed with prejudice. *Cf. Collins v. Lew*, 642 F. Supp. 3d 577, 587 (S.D. Tex. 2022) (dismissing claims that violated the mandate rule with prejudice), *aff'd sub nom. Collins v. Dep't of the Treasury*, 83 F.4th 970 (5th Cir. 2023).

**C. Roe's Request for Declarative and Injunctive Relief Fails.**

In his Operative Complaint, Roe also adds claims under the First and Fifth Amendments seeking relief from possible removal from the United States. Pointing to the President's Executive Order 14,165 and the Laken Riley Act, Roe asserts that he fears his detention and deportation may be imminent and contends that if he is detained or removed during these proceedings, his First Amendment right of access to the courts and Fifth Amendment right to due

process would be violated. Doc. 151 at 61-66. Roe seeks declarative and injunctive relief prohibiting his removal by DHS or ICE. Doc. 151 at 63-66.

"The First Amendment Petition Clause guarantees the right to access the courts of the United States." *Hill v. Walker*, 718 F. App'x 243, 247-48 (5th Cir. 2018). And the Due Process Clause similarly "assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974). The Constitution, however, does not guarantee litigants the most convenient or efficient access to courts. *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (protecting prisoners' right to access tools to attack their sentences or the conditions of their confinement but stating that "[i]mpairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration").

Even assuming the Right to Petition and Due Process Clauses of the Constitution[3] apply to Roe's claims in Counts Five and Six of the Operative Complaint, as the Court previously determined in the Order denying the request for a temporary restraining order, Doc. 170, the Court lacks subject matter jurisdiction to enjoin the Government from future or potential administrative decisions, including any future order of deportation or removal of Roe from the United States. *See Qureshi v. Holder*, 663 F.3d 778, 782 (5th Cir. 2011) (affirming dismissal for lack of subject matter jurisdiction when the alien's asylum claim was premature because removal proceedings were still pending and there was no final agency action); *Ike v. United States Citizenship & Immigr. Servs.*, No. 3:21-CV-2320-D, 2022 WL 717262, at *2 (N.D. Tex. Mar.

---

[3] *See e.g., id.*; *DeMarco v. Davis*, 914 F.3d 383, 387 (5th Cir. 2019) ("Prisoners have a constitutionally protected right of access to the courts that is rooted in the Petition Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment." (cleaned up)); *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993) (collecting cases).

10, 2022) (Fitzwater, J.) (dismissing alleged constitutional claims related to immigration proceedings for lack of subject matter jurisdiction).

Accordingly, Roe's claims for violations of the First and Fifth Amendments, based on his anticipated deportation, fail as a matter of law because they are premature and the Court lacks subject matter jurisdiction to address them. As such, the Government is also entitled to summary judgment on Counts Five and Six of the Operative Complaint, which should be dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendant's *Second Motion for Summary Judgment*, Doc. 200, should be **GRANTED**. Roe's claims in Counts One through Four should be **DISMISSED WITH PREJUDICE** and in Counts Five and Six should be **DISMISSED WITHOUT PREJUDICE**. As no claims will remain pending, the Clerk of the Court should be directed to close this case.

**SO RECOMMENDED** on February 23, 2026.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to object to 14 days).